

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-5-2006

# USA v. Jackson

Precedential or Non-Precedential: Precedential

Docket No. 05-1454

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"USA v. Jackson" (2006). *2006 Decisions*. Paper 1187.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1187

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

─────

No. 05-1454

─────

UNITED STATES OF AMERICA

v.

ANTHONY JACKSON

Appellant

─────

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 03-cr-00642)
District Judge: Honorable Michael M. Baylson

─────

Submitted Under Third Circuit LAR 34.1(a)
March 9, 2006

Before:   ROTH and ALDISERT, Circuit Judges, and
RODRIGUEZ,[*] District Judge

───────────────

[*]  The Honorable Joseph H. Rodriguez, Senior District Judge,
United States District Court for the District of New Jersey,

(Filed: April 5, 2006)

Jeanne K. Damirgian, Esq.
Two Penn Center Plaza, Suite 200
1500 Kennedy Blvd.
Philadelphia, PA 19102-1706

    Counsel for Appellant

Patrick L. Meehan, Esq.
Robert A. Zaumer, Esq.
Michelle T. Rotella, Esq.
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106

    Counsel for Appellee

---

**OPINION**

---

ALDISERT, <u>Circuit Judge</u>

In Anthony Jackson's appeal from a conviction and sentence in the United States District Court for the Eastern District of Pennsylvania, we join several sister courts of appeals in holding that 21 U.S.C. § 841(a)(1) (possession of a controlled substance with intent to distribute) is a lesser-included offense of 21 U.S.C. § 860(a) (possession of a controlled substance with

sitting by designation.

2

intent to distribute within 1,000 feet of a school).

His appeal also requires us to decide whether: (1) a supplemental jury instruction issued by the District Court was unduly coercive; (2) sufficient evidence existed in the record for the trier of fact to have found beyond a reasonable doubt that Jackson's presence within 1,000 feet of a school was voluntary; and (3) Jackson received sufficient notice of the results of the school zone measurements that the government intended to introduce at trial. We have jurisdiction to hear the instant appeal pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a)(1). We will affirm Jackson's conviction for violating § 860(a), vacate his conviction and sentence for the lesser-included offence of violating § 841(a)(1), and remand for resentencing.

I.

On April 3, 2003, two officers of the Philadelphia Police Department were patrolling West Philadelphia when they came upon a car stopped at a red light at the intersection of 64th Street and Elmwood Avenue. When the light turned green, the car did not move. After waiting a few seconds the officers honked the horn of their vehicle and activated their vehicle's siren for a full cycle. The car still did not move. The officers next pulled alongside the stopped car and saw the defendant, Jackson, slumped and unmoving behind the steering wheel. They then approached the driver's door of Jackson's vehicle, whereupon they yelled through the driver's window and banged on it heavily, without receiving a response from Jackson.

Under the impression that Jackson needed medical

3

attention, the officers decided to enter the vehicle. They reached through a crack in the window, lowered the window and opened the driver's door. The officers found that the car was still in drive with Jackson's foot depressing the brake pedal. While reaching in to put the vehicle into park, they noticed something on Jackson's lap – two baggies that they believed to carry marijuana and cocaine. All the while, Jackson remained sound asleep. It was not until one of the officers put handcuffs on Jackson that he awoke. Jackson was then arrested. Upon later analysis, it was found that the baggies contained 48.35 grams of cocaine base and 4.02 grams of marijuana. A handgun was also recovered from Jackson's car.

After a federal grand jury returned an indictment against Jackson on September 25, 2003, two superceding indictments were subsequently entered on March 23, 2004 and August 5, 2004. He was brought to trial on the August indictment, which charged him with four counts: (1) possession with intent to distribute more than five grams of cocaine base, in violation of 21 U.S.C. § 841(a)(1);[1] (2) possession with intent to distribute

---

[1] 21 U.S.C. § 841(a)(1) provides that:

> Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally--
>
> > (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance . .

more than five grams of cocaine base within 1,000 feet of a school, in violation of 21 U.S.C. § 860(a);[2] (3) knowing possession of a handgun during the commission of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1); and (4) possession of a handgun by a convicted felon, in violation of 18 U.S.C. § 922(g)(1).

A jury trial began on November 1, 2004, and two days later the jury returned a guilty verdict as to Counts One and Two, and acquittals on Counts Three and Four. For violating § 841(a)(1), the Court sentenced Jackson to 300 months in prison, a $1,000 fine and a $100 special assessment. For violating § 860(a), the Court sentenced him to 300 months in prison, to run concurrently to the sentence for Count One, and a $100 special assessment. For each count, he also received an eight-year period of supervised release, to run concurrently. This appeal of his conviction and sentence followed.

---

.

[2] 21 U.S.C. § 860(a) punishes:

> Any person who violates section 841(a)(1) of this title or section 856 of this title by distributing, possessing with intent to distribute, or manufacturing a controlled substance in or on, or within one thousand feet of, the real property comprising a public or private elementary, vocational, or secondary school or a public or private college, junior college, or university, or a playground . . .

5

II.

Jackson first contends that the supplemental charge issued by the Court unduly coerced the jury into reaching a conviction because it improperly raised the specter of a new trial should they fail to reach a unanimous decision.

After only two hours of deliberations, the jury submitted a note to the Court stating:

> Judge Baylson, Your Honor, we are not able to get past count one. There is one juror who cannot agree that the defendant "knowingly" possessed with intent to distribute cocaine base ("crack"). This juror is adamant that they will not change their decision. Where do we go from here? Jury Foreman.

(App. at 55a.) In discussing the contents of the supplemental jury charge with both parties, the Court indicated that it would inform the jury that if they could not agree, the jurors would then be dismissed and a retrial before a new jury would be required. Jackson objected to this instruction, but was overruled after the Court stated that it was unaware of any case from this Court holding that it is error to simply raise the prospect of retrial before another jury. Thereafter, the District Court read the following supplemental charge to the jury:

> All right. In this case, ladies and gentlemen, you've been deliberating less than two hours, and that's included some time to have

6

lunch.  I want to re-read to you slightly different words, but the same concept that I said before. I'd like you to go back into the jury room and talk some more about the evidence.

And, remember my entire instructions, that your job is to be the finders of facts, that you should consider the evidence, you should consider my instructions on the law, and that you should render a verdict based on the evidence.  And, that should be your guide, what the evidence is in this case and what the instructions were on the law.

Now, it's your duty as jurors to talk with one another and deliberate in the jury room.  You should try to reach agreement, if you can, without doing violence to our [sic] individual judgment. Each of you must decide the case for yourself, but only after consideration of the evidence with the other members of the jury.

While this is going on, do not hesitate to reexamine your own opinion and change your mind if you are convinced that you are wrong. But, don't give up your honest belief just because the others thing [sic] differently or merely to get the case over with.

Remember that the Government has to prove its case beyond a reasonable doubt.  And, if they do not do this, then you must return a verdict

7

of not guilty. If they have done this, then you must return a verdict of guilty.

So, I ask you to remember my instructions on what is reasonable doubt and all the other instructions that I gave you. And, remember that your oath as jurors is to decide the case on the evidence in the courtroom and the instructions of the law, and to render a verdict if you possibly can, on the charge.

Now, if you can't get beyond count one, then you can't go on to counts two and three, because they're all tied together. And, if that's the case, then the case will have to be retried in front of another jury. So, go back in front – go back please and continue to deliberate. Thank you very much.

(App. at 57a-59a.)

Because Jackson objected at trial to the supplemental jury instruction, we will review the Court's decision to read the supplemental charge for an abuse of discretion. United States v. Zehrbach, 47 F.3d 1252, 1264 (3d Cir. 1995) (citations omitted). Under that standard, Jackson must show that the Court's action was "arbitrary, fanciful or clearly unreasonable." Stich v. United States, 730 F.2d 115, 118 (3d Cir. 1984). Moreover, we review the supplemental instruction given not "'in artificial isolation, but . . . in the context of the overall charge.'" United States v. Brennan, 326 F.3d 176, 192 (3d Cir. 2003)

8

(quoting United States v. Park, 421 U.S. 658, 674 (1975)).

## A.

The collective experience gleaned from similar cases in this Court persuades us that whether a supplemental charge passes muster when informing the jury that a new trial will be necessary should the jurors not reach a verdict depends heavily on the context in which the statement was made. We have repeatedly held that supplemental jury charges should not be used to "blast a hung jury into verdict." United States v. Burley, 460 F.2d 998, 999 (3d Cir. 1972) (quoting United States v. Fioravanti, 412 F.2d 407, 419 (3d Cir. 1969)). "[I]t is a cardinal principle of the law that a trial judge may not coerce a jury to the extent of demanding that they return a verdict." Fioravanti, 412 F.2d at 416. We, however, will only find a charge to be unduly coercive where the supplemental charge caused the jury to be "influenced by concerns irrelevant to their task" and "reached its subsequent verdict for reasons other than the evidence presented to it." United States v. Eastern Medical Billing, Inc., 230 F.3d 600, 613 (3d Cir. 2000) (citing Burley, 460 F.2d at 999).

Jackson analogizes the charge given here to those we found to be unduly coercive in Burley and Eastern Medical Billing, Inc. In Burley, we found a charge to be coercive where it not only mentioned the prospect of a new trial, but also extensively depicted the time and expense that would be required to hold that new trial. 460 F.2d at 999. The charge also stressed the court's own belief that the government's identification evidence was "strong and persuasive." Id. In

9

Eastern Medical Billing, Inc., the supplemental jury charge not only expounded upon the prospect of a new trial, but also extensively stressed the importance of the case and the time and burden of a retrial. 230 F.3d at 604. In evaluating this charge, we concluded that the district court's instruction not only returned the jury to their deliberations with considerations of that time and expense, but also made the jurors in the minority believe that the views of the majority were more reasonable. Id. at 615. We concluded that the giving of such an instruction, which browbeat the jury with repeated irrelevancies, was an abuse of discretion. See id.

## B.

By comparison, the supplemental charge given here merely mentioned that "the case will have to be retried before another jury," and nothing more. Unlike in Burley and Eastern Medical Billing, Inc., the District Court did not stress the time, expense or burden of a new trial, and it never hinted at its belief as to Jackson's guilt or innocence. Indeed, it emphasized, much to the advantage of the defendant, that the government had to prove its case beyond a reasonable doubt and that "if they do not do this, then you must return a verdict of not guilty." The Court stressed the government's burden of proof and the jurors' responsibility to consider honestly the evidence. The Court told *all* the jurors to reexamine their views without hesitation, but not to surrender those beliefs for the sake of expediency. Consequently, any undue coercion created in this case by the brief mention of a new trial was mitigated by these accompanying strong warnings and reminders. See Brennan, 326 F.3d at 193 (observing how warnings and reminders in a

10

supplemental charge removed any possibility of undue coercion).

Although our inquiry in these matters is fact-specific, we have generally concluded that a charge is unduly coercive when the trial court not only states that a new trial will result, but goes further and unduly emphasizes the consequences, i.e., time, toil, or expense, that will accompany a failure to arrive at an unanimous verdict. See Burley, 460 F.2d at 999-1000; Eastern Medical Billing, Inc., 230 F.3d at 613-615. That did not occur here. We are therefore persuaded that the charge did not so prejudice the jury's deliberations such that the jury reached it's verdict upon considerations of matters other than the evidence in the record.[3] Accordingly, the giving of this charge was not beyond the permissible bounds of the District Court's discretion.

III.

Jackson next contends that his conviction for violating §

---

[3] We also reject Jackson's contention that the supplemental charge both misled and coerced the jury and improperly stated the law by suggesting that a guilty verdict upon Count One is a necessary predicate for a guilty verdict upon Count Four. The charge clearly only predicated Counts Two and Three upon a guilty verdict for Count One, which is a correct statement of law. Furthermore, not only was the trial bifurcated so that the jury only heard evidence upon Count Four after they had deliberated and returned a verdict upon the first three counts, but the jury found Jackson not guilty of both Counts Three and Four.

860(a) should be vacated because the government presented insufficient evidence at trial to prove beyond a reasonable doubt that he was voluntarily within 1,000 feet of a school. He argues that the evidence presented at trial merely shows that he was found unconscious at the red light and that there was no evidence introduced which would indicate that he had any intention of remaining in the area where he was found. But for his "passing out" at the red light, he continues to argue, he would have proceeded onwards and not been found within 1,000 feet of the school.

## A.

"We apply a particularly deferential standard of review when deciding whether a jury verdict rests on legally sufficient evidence." United States v. Dent, 149 F.3d 180, 187 (3d Cir. 1998). We review the evidence in the light most favorable to the verdict, and will sustain the verdict if "'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Id. (quoting United States v. Voigt, 89 F.3d 1050, 1080 (3d Cir. 1996)).

We and our sister courts have established guidance as to what must be presented to prove an § 860(a) violation. First, the government does not have to show that the defendant had knowledge that he was possessing narcotics *within* 1,000 feet of a school. United States v. Dimas, 3 F.3d 1015, 1022 (7th Cir. 1993); United States v. Falu, 776 F.2d 46, 50 (2d Cir. 1985) ("[Section 860(a)] contains no express *mens rea* requirement for the distance element of the offense."). Second, the *mens rea* element for § 860(a) is found in the required underlying

violation of § 841(a)(1), which calls for a *knowing* possession of narcotics *with intent* to distribute. Falu, 776 F.2d at 50 ("This construction of [section 860(a)] does not criminalize otherwise innocent activity, since the statute incorporates section 841(a)(1), which already contains a *mens rea* requirement . . . ."). Third, under § 860(a), the government does not need to prove that the defendant intended to distribute the narcotics within 1,000 feet of a school. United States v. Rodriguez, 961 F.2d 1089, 1092 (3d Cir. 1992) ("Since the *actus reus* for this offense is possession, it follows that possession of the drugs, not the intended location for distribution, must be located within 1000 feet of a school.").

## B.

With this framework in mind, we turn to the facts supporting Jackson's conviction for violating § 860(a). First, Jackson does not dispute his conviction for violating § 841(a)(1). That conviction establishes that Jackson was found in knowing possession of cocaine base with intent to distribute. Building from this factual foundation, we then observe that Jackson was found in possession of those narcotics while stopped at an intersection traffic light located within 1,000 feet of four different schools. This clearly supports a jury finding of a violation of § 860(a). Jackson's lack of consciousness when found by the police is immaterial because § 860(a) does not require a knowing entry into or intent to distribute within the protected 1,000-foot school zone. The *mens rea* element of § 860(a) is found in the violation of § 841(a)(1), which is undisputed, and the *actus reus* consisted of his possession of narcotics within 1,000 feet of four different schools. It is

13

therefore abundantly clear that sufficient evidence existed for the jury to have found beyond a reasonable doubt that Jackson violated § 860(a). Accordingly, we reject Jackson's contentions to the contrary.

## IV.

Jackson next argues that the District Court committed reversible error because, over his objection, the Court admitted the testimony of ATF Special Agent Francis Neeley who was called to the witness stand to testify to the proximity of the site of Jackson's arrest to various school zones.[4] At trial, Jackson objected to this testimony, stating that "[o]ne of the things [he] had asked for specifically in [his] discovery requests was the results of measuring and scientific tests." (App. at 45a.) Because Jackson made a contemporaneous objection to the introduction of this testimony, we will review the Court's ruling for an abuse of discretion. Stich, 730 F.2d at 118.

The District Court did not exceed permissible discretion

---

[4] Agent Neeley testified that, using a surveyor's measuring wheel, he measured the intersection of 64th and Elmwood, where Jackson was found, to be located within 1,000 feet – 660, 675, 940 and 125 feet, respectively – of four different school facilities operated by three different schools. He even noted that the facility located 125 feet from the intersection was situated at 64th and Elmwood. Incidentally, while testifying at trial, one of the officers who arrested Jackson also noted the close proximity of this facility to the site of Jackson's arrest, across the street on Elmwood Avenue.

14

in overruling Jackson's objection and admitting Agent Neeley's testimony. The government responded that it had already provided the results of the measurements and scientific tests. Specifically, the government had provided Jackson with the grand jury testimony in which Agent Neeley had provided the exact same measurement results that he later provided at trial. Jackson's requests for the results of the scientific measurements were therefore fulfilled and the objection was correctly overruled.

On appeal, Jackson now argues that he was not furnished with the methodology or reports of the agent's measurements (i.e., the agent's start and stop points for his measurements) and that this lack of notice prejudiced his ability to effectively cross-examine Agent Neeley. He argues that by failing to provide this documentation the government violated the discovery guidelines of Rule 16(f) of the Federal Rules of Criminal Procedure. Jackson contends that if we agree that the agent's testimony should have been excluded then insufficient evidence supports his conviction for violating 21 U.S.C. § 860(a).

Because this request for methodology, rather than "results," was raised for the first time on appeal, we review this issue for plain error. United States v. Irizarry, 341 F.3d 273, 298 (3d Cir. 2003). Jackson has not carried the heavy burden of showing plain error here, especially as to how he was prejudiced. Id. ("[T]he defendant bears the burden of demonstrating prejudice."). He argues that by not knowing Agent Neeley's methodology, he could not mount an effective cross-examination. Jackson, however, could have easily introduced his own evidence disputing the government's

15

measurements or more vigorously cross-examined Agent Neeley upon his measurements. But he did neither, and his tactical choice not to mount such a defense does not give rise to reversible error.[5]

## V.

Finally, Jackson argues that 21 U.S.C. § 841(a)(1) is a lesser-included offense of 21 U.S.C. § 860(a), and that the District Court committed error by failing to recognize this distinction at sentencing. He contends that his conviction and sentence for violating § 841(a)(1) should be vacated and this

---

[5] Moreover, for much the same reason, were we to construe Jackson's argument to be that the government violated its obligations under Brady v. Maryland, 373 U.S. 83 (1963), we would still conclude that no reversible error occurred because Jackson has not shown that he was prejudiced by the lack of the documentation on Agent Neeley's methodology. In order to show prejudice under Brady, "'[t]he question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.'" United States v. Mitchell, 365 F.3d 215, 254 (3d Cir. 2004) (quoting Kyles v. Whitley, 514 U.S. 419, 434 (1995)). Here, Jackson was found within 1,000 feet of not just one school facility, but four. The government's failure to disclose documentation of Agent Neeley's methodology, assuming such documentation exists, does not so prejudice the proceedings as to suggest that Jackson did not receive a fair trial.

cause remanded for resentencing pursuant to his superceding conviction for violating § 860(a). The government concedes that Jackson is correct.

Because Jackson did not preserve this objection at trial, we review it on appeal only for plain error. United States v. Couch, 291 F.3d 251, 252-253 (3d Cir. 2002). Under this standard there must be (1) an "error" that is (2) "plain" and (3) that "affect[s] substantial rights." Olano, 507 U.S. at 731-732. If a plain error is found that affects the appellant's substantial rights, "an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." Johnson v. United States, 520 U.S. 461, 467 (1997) (citations and quotations omitted). An error affects substantial rights if it is prejudicial, i.e., "affected the outcome of the district court proceedings." United States v. Evans, 155 F.3d 245, 251 (3d Cir. 1998) (quoting Olano, 507 U.S. at 734).

Although this Court has never authoritatively stated that § 841(a)(1) is a lesser-included offense of § 860(a), see United States v. Romeu, 117 Fed. Appx. 827, 829, 2004 WL 2904746 (3d Cir. Dec. 16, 2004) (unpublished) (concluding that § 841(a)(1) is a lesser-included offense of § 860(a)), other courts of appeal have reached this same conclusion and consequently vacated convictions and sentences for § 841(a)(1) where a district court erroneously sentenced a defendant for violating both § 841(a)(1) and § 860(a). See United States v. Underwood, 364 F.3d 956, 966-967 (8th Cir. 2004), vacated on other grounds by Carpenter v. United States, 543 U.S. 1108 (2005); United States v. White, 240 F.3d 127, 133 (2d Cir. 2001); United States

17

v. Kakatin, 214 F.3d 1049, 1051 (9th Cir. 2000); United States v. Freyre-Lazaro, 3 F.3d 1496, 1507 (11th Cir. 1993); United States v. Scott, 987 F.2d 261, 266 (5th Cir. 1993). To find Jackson guilty of § 860(a), the Court must have first found him guilty of § 841(a)(1). See United States v. Beltz, 385 F.3d 1158, 1162 (8th Cir. 2004) ("In fact one of the statutory elements of § 860 requires that § 841(a)(1) have been violated."). Because a conviction under § 860(a) only requires a finding of one additional element, the 1,000-foot proximity to a school, we agree that the possession of cocaine base with intent to distribute under 21 U.S.C. § 841(a)(1) is a lesser-included offense of possession with intent to distribute within 1,000 feet of a school under 21 U.S.C. § 860(a).

We also conclude that, in sentencing Jackson for violating both § 841(a)(1) and § 860(a) on facts arising from the same incident, the Court committed plain error. First, it was clear that the District Court's failure to consider § 841(a)(1) as a lesser-included offense affected the outcome of the proceedings because Jackson received a special assessment of $200, which would perhaps have only been $100 had the § 841(a)(1) conviction been properly subsumed into the § 860(a) conviction. Second, the erroneous dual conviction affected the fairness of the sentencing proceedings. Third, and most importantly, the error affected Jackson's "substantial rights." The Fifth Amendment right to be free from duplicative prosecutions and punishment is a hallmark of American jurisprudence. See United States v. Dixon, 509 U.S. 688, 695-696 (1993); Blockburger v. United States, 284 U.S. 299 (1932); White, 240 F.3d at 132 ("If, however, either offense does not contain an element not contained in the other, the offenses are

18

considered the same offense for double jeopardy purposes, and a defendant cannot be convicted of both."). Jackson's conviction and sentence for violating § 841(a)(1) should therefore be vacated.

* * *

Accordingly, we will affirm Jackson's conviction for violating 21 U.S.C. § 860(a), vacate his conviction and sentence for violating § 841(a)(1), and remand for resentencing.

19