

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-12-2006

# Rivera v. Comm PA

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-2072

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Rivera v. Comm PA" (2006). *2006 Decisions.* Paper 757.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/757

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 04-2072

ANGEL RIVERA,

Appellant

v.

COMMONWEALTH OF PENNSYLVANIA;
ATTORNEY GENERAL OF PENNSYLVANIA;
UNITED STATES ATTORNEY FOR THE MIDDLE
DISTRICT OF PA

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 02-cv-08399)
District Judge: The Honorable Charles R. Weiner

Submitted Under Third Circuit LAR 34.1(a)
January 13, 2006

Before:  BARRY, AMBRO and ALDISERT, Circuit Judges

(Filed July 12, 2006)

OPINION OF THE COURT

ALDISERT, Circuit Judge.

Angel Rivera appeals from a denial of his petition for a writ of habeas corpus relating to his Pennsylvania state court convictions for robbery, attempted homicide and conspiracy. Rivera filed a petition for relief under 28 U.S.C. § 2254 in the United States District Court for the Eastern District of Pennsylvania. The Court restricted its analysis to those claims Rivera had exhausted in the state courts: two separate claims that the prosecution withheld evidence in violation of Brady v. Maryland, 373 U.S. 83 (1963). It then ruled against Rivera, finding that the state courts' adjudication of those claims was "not contrary to clearly established Supreme Court precedent." We agree with the District Court's determination and will affirm.

I.

Because the District Court did not comply with the separate document requirement of Rule 58 of the Federal Rules of Appellate Procedure, the window for filing a timely notice of appeal was 150 days from the date of issuance of its April 16, 2003 opinion, i.e., by September 16, 2003. Rivera's August 11, 2003 letter to the District Court, which qualifies as a notice of appeal,[1] was therefore timely filed. Accordingly, we.

---

[1] Rivera submitted the August 11, 2003 letter *pro se*, prior to retention of counsel for his federal habeas petition. Although that letter does not premise itself to be a notice of appeal and certainly does not strictly comply with the notice requirements of Rule 3(c) of the Federal Rules of Appellate Procedure, it qualifies as a notice of appeal (1) because of the liberal standards by which we review a *pro se* appellant's compliance with the standards of Rule 3(c) and (2) because it evidences an intent to appeal the District Court's denial of his habeas petition. See Torres v. Oakland Scavenger Co., 487 U.S. 312, 316-317 (1988) (stating that "a court may nonetheless find that the [*pro se*] litigant has complied with the rule if the litigant's action is the functional equivalent of what the rule

2

have jurisdiction to hear this appeal pursuant to 28 U.S.C. §§ 1291 and 2253.

## II.

The parties are familiar with the facts and proceedings in the District Court and the Pennsylvania state courts, so we will only briefly revisit them here. In Allentown, Pennsylvania, on the night of September 19, 1996, Arquimides Bonilla was beaten, stabbed, robbed and left for dead in a parking lot. He was found alive the next morning behind Manny and Elizabeth Rodriguez's motorcycle shop. Angel Rivera and his co-defendant, Rafael Santos, were subsequently identified as Bonilla's assailants.

At trial, Rivera asserted his innocence – arguing that the real assailant was a man named Angel Cruz "Papo" Delgado. Rivera stated that on the day of the attack he was nowhere near Bonilla, instead averring that he had gone to New York City to pick up a friend who had flown in from Puerto Rico. Nevertheless, evidence was introduced at trial that tied him to the attack. On October 16, 1997, Rivera was found guilty by a jury in the Court of Common Pleas for Lehigh County of robbery, attempted criminal homicide and conspiracy. The court then sentenced him to six and one-half to twenty years imprisonment for the robbery count, four to twenty years imprisonment for the attempted criminal homicide count, and four to twenty years for the conspiracy count. The attempted criminal homicide and conspiracy sentences were to run concurrently, while the

---

requires."); Brannan v. United States, 993 F.2d 709, 710 (9th Cir. 1993) (considering a letter to the court to be a notice of appeal where it evidenced defendant's desire to appeal his sentence).

robbery sentence was consecutive.

The Pennsylvania Superior Court affirmed Rivera's sentence and conviction on November 23, 1998, and his petition for allowance of appeal was denied by the Pennsylvania Supreme Court on May 11, 1999. On February 4, 2000, Rivera filed a *pro se* petition for post-conviction relief pursuant to the Pennsylvania Post Conviction Relief Act (PCRA), 42 Pa. Cons. Stat. § 9541-9545, with the Court of Common Pleas for Lehigh County (the "PCRA Court"). Counsel was then appointed for Rivera's petition and, following a hearing, the PCRA Court denied Rivera's PCRA petition on July 14, 2000. The Superior Court affirmed this decision in a memorandum opinion filed February 26, 2002.

On August 8, 2002, Rivera filed a *pro se* petition for writ of habeas corpus in the United States District Court for Eastern District of Pennsylvania. In a memorandum opinion and order filed April 16, 2003, the Court denied Rivera's petition.[2] The Court, however, did issue a certificate of appealability for Rivera's two <u>Brady</u> claims. This appeal of those two claims followed.

III.

---

[2] In his habeas petition to the District Court, Rivera presented five claims: two alleging violations of <u>Brady</u>, and three others alleging that his trial counsel had been ineffective. The District Court dismissed the three ineffective assistance of counsel claims, concluding that they had not been exhausted in the state courts. It did, however, conclude that the two <u>Brady</u> claims had been exhausted and accordingly addressed their merits, rejecting each in turn.

Because the District Court dismissed Rivera's habeas petition based solely upon a review of the state court record, without holding an evidentiary hearing, we review the District Court's opinion *de novo*. Marshall v. Hendricks, 307 F.3d 36, 50 (3d Cir. 2002). Rivera's petition for habeas corpus relief from his state court conviction is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. §§ 2241-2254. Under the AEDPA, there is a bifurcated standard of review – different standards apply to federal court review of the state courts' adjudication of the facts and the law. As for the law, federal habeas corpus relief will only be granted if the state decision being challenged "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States." § 2254(d)(1). In Williams v. Taylor, 529 U.S. 362 (2000), the Supreme Court held that a state court decision is "contrary to" clearly established federal law if the decision (1) "contradicts the governing law set forth in [the Supreme] Court's cases" or (2) "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a [different] result."[3] Id. at 405. An "unreasonable application" of Supreme Court precedent occurs: (1) "if the state court identifies the

_____

[3] The AEDPA limits "the authorities on which federal courts may rely in making this determination to the decisional law of the Supreme Court, that is, the 'Federal law, as determined by the Supreme Court of the United States.'" Lewis v. Johnson, 359 F.3d 646, 652 (3d Cir. 2004). A lower federal court decision may, however, be considered in assessing whether a state court's application of the law was reasonable. Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 890 (3d Cir. 1999) (en banc).

5

correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case;" or (2) if it "either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 407.

IV.

Rivera argues that the District Court and state courts erred in denying his two Brady claims. He contends that the government withheld: (1) a note upon which was written the name "Papo" and a telephone number, which was found in co-defendant Santos' apartment approximately one week after Bonilla's attack; and (2) that Elizabeth Rodriguez had previously identified Angel Rivera to investigators as having the nickname "Papo."[4] Rivera argues that both of these pieces of information were material, and that they either were impeaching or exculpatory evidence or could have lead to the discovery of such evidence.

The Pennsylvania Superior Court reviewing Rivera's PCRA petition concluded that no Brady violation occurred. In so doing, it made two distinct holdings. First, it held that no Brady violation occurred because Rivera did not "point to any evidence in the record that reveals the prosecutor engaged in misconduct to conceal, withhold, or

---

[4] Rodriguez's identification allowed investigators to tie Rivera to the attack. Using this information, they were able to put together a photo lineup from which Bonilla identified Rivera as his assailant.

6

suppress exculpatory evidence." (Sup. Ct. Op., app. at 21a.) Second, it held in the alternative that even if a Brady violation occurred, "any Brady errors were harmless and did not so undermine the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." (Id. at 21a-22a.) We interpret this to mean that even if evidence was withheld, that evidence was not material or favorable, and so there was no error.[5]

To establish a Brady violation, a defendant must prove three things: "(1) the government withheld evidence, either willfully or inadvertently; (2) the evidence was favorable, either because it was exculpatory or of impeachment value; and (3) the withheld evidence was material." Lambert v. Blackwell, 387 F.3d 210, 252 (3d Cir. 2004) (citations omitted). We will follow this format in analyzing the arguments presented.

## A.

We start with the assumption that there was a withholding of evidence,[6] and turn

---

[5] The PCRA Court had held that (1) the nondisclosure of the note was not a violation of Brady because Rivera did not show that it was material evidence, and (2) that the nondislosure of Elizabeth Rodriguez's prior identification was not a violation of Brady because Rivera had not shown that this evidence was withheld or suppressed by the prosecution. (PCRA Ct. Op., app. at 5a-7a.) In so ruling, unlike the Superior Court, the PCRA Court did not make alternative holdings, but instead individually ruled on whether each piece of withheld evidence constituted a Brady violation.

[6] We agree with Rivera that the state courts obviously erred inasmuch as they held that Brady requires that the nondisclosure be caused by prosecutorial misconduct. Brady only requires that material evidence that is favorable to the defendant be undisclosed, without regard for the good or bad faith reasons of the nondisclosure. Brady, 373 U.S. at 87.

immediately to an examination of the Superior Court's alternative holding: that the withholding did not amount to a <u>Brady</u> violation because the undisclosed evidence was not material. Nevertheless, before evaluating the materiality of the evidence, we must determine the extent to which it is favorable. <u>See</u> <u>United States v. Bagley</u>, 473 U.S. 667, 674 (1985) (stating that the prosecutor is only required to "disclose evidence *favorable* to the accused that, if suppressed, would deprive the defendant of a fair trial") (emphasis added). Evidence is favorable if it is exculpatory or impeaching. <u>Id.</u> Evidence of slight, trivial or hypothetical favorability obviously does not sway us as much in our materiality analysis as does evidence of a clearly impeaching or exculpatory nature.

We do not view the note containing the name "Papo" and a phone number as being greatly favorable to the defense. First, there are no indications in the record that the note was exculpatory, or that it did or would lead to any exculpatory or impeaching evidence. (<u>See, e.g.,</u> PCRA Tr., testimony of Detective Markowitz, app. at 231a (stating that "nothing of significance came out of [the note], otherwise there would be a police report indicating such").) Rivera argues that had he been provided with the note prior to trial he could have used it to investigate and discover whether it referenced Angel Cruz Delgado. (Rivera Br. at 29.) We acknowledge that courts reviewing <u>Brady</u> violations should be aware of "the difficulty of reconstructing in a post-trial proceeding the course that the defense would have taken" had they been provided with the undisclosed information, <u>see</u> <u>Bagley</u>, 473 U.S. at 683, but here we are confronted with the inescapable facts that: (1)

8

the government was unable to produce leads from this document, and (2) that Rivera has not cited to any evidence that he has been able, post-trial, to discover from the note.[7] It is therefore pure speculation that this note *could* be impeaching or exculpatory. If anything, the note is *inculpatory*, because it was found in Santos' apartment, Santos was convicted as Rivera's accomplice in the attack, and Rivera was known by the name "Papo."[8]

Moreover, that Elizabeth Rodriguez identified Rivera prior to trial as bearing the name "Papo" is even less favorable to the defense. Rivera argues that this evidence is favorable because "all information regarding her testimony that may have provided for her impeachment or cross-examination constitutes favorable or exculpatory evidence under Brady." (Rivera Br. at 30.) He later argues that "it is exculpatory information as it was information necessary for impeachment." (Id. at 32.) Stepping off this carousel of logic, we cannot see how this information is exculpatory or impeaching. It may have

---

[7] Rivera contends that "[a]fter being provided with the handwritten note, [he] was able to develop evidence concerning Mr. Delgado, including obtaining a photograph of Mr. Delgado." (Reply Br. at 11, 14.) By this statement, Rivera suggests that the note directly led to and implicated Delgado. We are unable to agree. The record only indicates that a private investigator hired post-trial by Rivera was able to discover information on Delgado, (PCRA Tr., app. at 220a-225a.), but there is no support for the assertion that this was as a result of information on the note.

[8] Rivera attempts to rebut the presumption created by the state courts that he bears the nickname "Papo" by citing to the testimony of various individuals who asserted that "Papo" is not his nickname. See 28 U.S.C. § 2254(e)(1) (stating that as for facts found by the state courts, "[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence"). Nonetheless, both Bonilla and Elizabeth Rodriguez testified that Rivera was known by the name "Papo." Accordingly, Rivera has not presented clear and convincing evidence that would rebut this presumption.

9

been helpful for the defense to know that Elizabeth Rodriguez could connect Rivera to a nickname borne by the attacker, but we do not see therein the seeds of any line of attack that could impeach her credibility or lead to evidence that would exonerate Rivera. He appears to gloss over the nature of just *how* this information was favorable, instead arguing that it is favorable by bootstrapping it to his argument that it is material.

These arguments are analogous those we rejected in United States v. Boone, 279 F.3d 163 (2002). Therein, we held that the prosecution had not violated Brady where it failed to disclose inculpatory statements made by a confidential informant about the defendant. Id. at 190. Moreover, we rejected the defendant's argument that, regardless of whether the evidence was inculpatory, he could have used it to impeach the informant and show that the defendant had been falsely accused. Id. (rejecting defendant's "domino theory" that he could have used the inculpatory evidence to develop exculpatory evidence). Accordingly, although neither the PCRA Court nor the Superior Court expressly based their conclusions upon a determination that the withheld evidence was not favorable to Rivera, we certainly perceive that its favorability was nonexistent at worst and dubious at best.

B.

Nonetheless, assuming *arguendo* that these two pieces of evidence are favorable, we agree with the state courts that they are not material. The Supreme Court has said that "evidence is material only if there is a reasonable probability that, had the evidence been

10

disclosed to the defense, the result of the proceeding would have been different." Bagley, 473 U.S. at 682. The question could be phrased as being, "when viewed as a whole and in light of the substance of the prosecution's case," did the nondisclosure of these two pieces of evidence prior to trial lead to an untrustworthy guilty verdict? See United States v. Pelulo, 105 F.3d 117, 123 (3d Cir. 1997).

Rivera argues that the withheld note was material because it could have led to the development of evidence implicating Delgado and not Rivera as Bonilla's assailant, and that it could have led to impeaching evidence. (Rivera Br. at 38.) As for the nondisclosure of Elizabeth Rodriguez's prior identification of Rivera, he argues that this information was material because of the impact it would have had on his trial preparation, i.e., had he known that Elizabeth Rodriguez knew Rivera as "Papo," Rivera's counsel would not have asked her during cross-examination whether she could recite the nicknames by which Rivera is known (to which she replied "Jay-O" and "Papo"). (Reply Br. at 15.)

First, as to the impeaching or exculpatory evidence that *could* have been produced by the defense had it been in possession of the note, we are dwelling in the realm of possibilities. "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." United States v. Agurs, 427 U.S. 97, 109-110 (1976). We cannot say that the nondisclosure of this evidence so prejudiced the trial

11

proceedings that our faith in the reliability of the verdict was undermined. The prosecution was apparently unable to produce any evidence from the note, and Rivera has not cited to any evidence he has been able to produce as a result of the note, see supra note 7. Indeed, Rivera's own trial counsel, when testifying at the PCRA hearing, even admitted that he was not sure just how helpful the note would have been. (See PCRA tr., app. at 212a.)

Second, as for the materiality of Elizabeth Rodriguez's prior identification of Rivera as "Papo," the issue, properly phrased, is not whether the government knew or did not know that in putting her on the stand she could provide potentially incriminating evidence,[9] but whether the nondisclosure of her prior identification so prejudiced the proceedings such that there is a reasonable probability that "the result of the proceedings would have been different," i.e., that our confidence in the outcome of the proceedings is undermined. See Bagley, 473 U.S. at 682. In assessing materiality, "[t]his court has recognized that [Brady materiality] requires consideration of the totality of the circumstances, including possible effects of non-disclosure on the defense's trial preparation." United States v. Perdomo, 929 F.2d 967, 971 (3d Cir. 1991). Nonetheless, "the Constitution is not violated every time the government fails or chooses not to disclose evidence that *might* prove helpful to the defense." Kyles, 514 U.S. at 436

---

[9] This was the standard relied upon by the PCRA Court, (see PCRA Ct. Op., app. at 7a.), and the District Court, (D. Ct. Op., app. at 31a.). The Superior Court did not rely upon this ground in assessing materiality.

(emphasis added).

Here, her testimony was not introduced by the prosecution for the purposes of having her state that Rivera's nickname was "Papo." It was only upon cross-examination that the defense proceeded upon this path and fell, unwittingly, into this pitfall. Essentially, Rivera asks us to find a Brady error within his trial counsel's tactical error of not knowing with certainty the answers to the questions he would pose to a witness. That this information was not disclosed – information that is arguably inculpatory and not exculpatory or impeaching – does not rise to the level of materiality just because Rivera's counsel did not know the answer to his question before he posed it to Elizabeth Rodriguez. Cf. United States v. Jackson, 443 F.3d 293, 300 (3d Cir. 2006) (refusing to find reversible, prejudicial error where defendant asserted that his cross-examination was hindered by the nondisclosure of certain evidence).

Accordingly, because we cannot say that "when viewed as a whole and in light of the substance of the prosecution's case," the nondisclosure of these two pieces of evidence prior to trial led to an untrustworthy guilty verdict, neither the note nor Elizabeth Rodriguez's prior identification were material for purposes of Brady.

C.

Finally, because we are viewing this case through lens of the AEDPA, even if we were to say that the withheld evidence was material, we could not say that the Superior

13

Court's contrary holding was an unreasonable application of the standards of <u>Brady</u>.[10] In assessing the reasonableness of state court application of Supreme Court precedent, the Supreme Court has admonished that "a federal court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly . . . that application must also be unreasonable." <u>Williams</u>, 529 U.S. at 411. Here, the Superior Court was examining two pieces of undisclosed information that were perhaps only slightly favorable and arguably material – in the <u>Brady</u> sense – to Rivera's case. Consequently, because the Superior Court correctly identified the correct standard for <u>Brady</u> materiality, (<u>see</u> Super. Ct. Op., app. at 21a-22a (assessing the reliability of the adjudication of guilt or innocence based on the nondisclosure of the evidence).), we cannot say that it was unreasonable for the Superior Court to conclude that this equivocal evidence was not material.

V.

We have considered all contentions raised by the parties and conclude that no further discussion is necessary. The judgment of the District Court will be affirmed.

---

[10] We will only analyze the "unreasonable application" standard of § 2254(d)(2) because, unlike their examination of <u>Brady</u>'s withholding prong, we cannot say that the state courts' adjudication of materiality was "contrary to" controlling Supreme Court precedent.