# Syllabus

Chief Justice:
Elizabeth T. Clement

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kathryn L. Loomis

## PEOPLE v FREDELL

Docket No. 164098. Argued on application for leave to appeal October 10, 2024. Decided December 26, 2024.

Frederick M. Fredell was convicted by a jury in the Genesee Circuit Court, Joseph J. Farah, J., of two counts of involuntary manslaughter, MCL 750.321; two counts of operating a vehicle while intoxicated or visibly impaired causing death, MCL 257.625(1), (3), and (4); two counts of reckless driving causing death, MCL 257.626(4); three counts of operating a vehicle while intoxicated or visibly impaired causing serious impairment of a body function, MCL 257.625(1), (3), and (5)(a); and three counts of reckless driving causing serious impairment of a body function, MCL 257.626(3). In 2015, defendant drove his vehicle on a freeway and struck the back of another vehicle; two individuals died as a result of the crash, and three individuals were seriously injured. Defendant had been speeding, and the toxicology report revealed that defendant had alcohol and controlled substances in his system. Relevant to this appeal, defendant was convicted of two counts of involuntary manslaughter and two counts of reckless driving causing death. On direct appeal, defendant claimed for the first time that his convictions violated the multiple-punishments strand of double jeopardy. Among his claims on appeal was the argument that his convictions for both involuntary manslaughter and reckless driving causing death were impermissible. The Court of Appeals, CAMERON, P.J., and BORRELLO and REDFORD, JJ., affirmed defendant's convictions. 340 Mich App 221 (2022). Defendant sought leave to appeal in the Supreme Court, and the Supreme Court ordered and heard oral argument on the application. 513 Mich 934 (2023).

In a unanimous opinion by Justice VIVIANO, the Supreme Court, in lieu of granting leave to appeal, *held*:

Under Michigan common law, the *mens rea* requirement for reckless driving causing death, willful or wanton disregard, is the same as the *mens rea* requirement for involuntary manslaughter, criminal gross negligence; therefore, when an involuntary-manslaughter charge is based on a theory of gross negligence, the offense does not have an element that reckless driving causing death does not have, and the Double Jeopardy Clauses of the United States and Michigan Constitutions prohibit convicting a defendant of both offenses.

1. US Const, Am V and Const 1963, art 1, § 15 provide that no person shall be subject for the same offense to be twice put in jeopardy. These Double Jeopardy Clauses protect individuals

in three ways: against a second prosecution for the same offense after acquittal, against a second prosecution for the same offense after conviction, and against multiple punishments for the same offense. At issue in this case was the multiple-punishments strand of double jeopardy. Whether multiple punishments are constitutionally permitted is a question of legislative intent, and a two-part test is used to determine whether multiple punishments arising from the same conduct are permitted. The first step is to look to the ordinary meaning of the statute; if the Legislature has clearly indicated its intent with regard to the permissibility of multiple punishments, the inquiry ends here. But if the Legislature's intent is not clear from the text of the statute, the abstract-legal-elements test from *People v Ream*, 481 Mich 223 (2008), and *Blockburger v United States*, 284 US 299 (1932), is applied. Under that test, if each of the offenses for which defendant was convicted has an element that the other does not, then there is no double-jeopardy violation. Two offenses will only be considered the same offense when it is impossible to commit the greater offense without also committing the lesser offense. In this case, there was no clear indication in the statutes as to whether the Legislature intended to allow multiple punishments for these crimes, so application of the abstract-legal-elements test was necessary.

2. In this case, defendant was convicted of both involuntary manslaughter, MCL 750.321, and reckless driving causing death, MCL 257.626(4). Involuntary manslaughter is the unintentional killing of another without malice in combination with a specified culpable act or mental state, which includes a causation component. The prosecution's theory in this case was that defendant acted in a grossly negligent manner, and there was no argument that defendant had an intent to injure. Accordingly, for purposes of this case, the elements of involuntary manslaughter are: (1) the defendant caused the death of another and (2) in doing the act that caused the death, the defendant was grossly negligent. The elements of reckless driving causing death under MCL 257.626(4) are: (1) the defendant operated a motor vehicle on a highway or other place open to the public, (2) the defendant operated a vehicle in willful or wanton disregard for the safety of persons or property, and (3) by the operation of that vehicle caused the death of another person. The Court of Appeals correctly concluded that reckless driving causing death contains an element that involuntary manslaughter does not: reckless driving causing death requires that the defendant operate a vehicle, while involuntary manslaughter does not. However, the Court of Appeals erred by holding that involuntary manslaughter contains a *mens rea* element that reckless driving causing death does not; the Court of Appeals' analysis failed to account for the fact that although the Legislature named the class of driving offenses contained in MCL 257.626 "reckless driving" (and used that phrase in the catchline heading of the statute), MCL 257.626(2) provides that the *mens rea* for all forms of reckless driving under MCL 257.626 is "willful or wanton disregard for the safety of persons or property." Therefore, the proper inquiry was whether "gross negligence" and "willful or wanton disregard for the safety of persons or property" are the same, not whether gross negligence and recklessness are the same. Michigan caselaw made it clear that these legal elements are the same. Under Michigan common law, the *mens rea* requirement for reckless driving causing death, willful or wanton disregard, is the same as the *mens rea* requirement for involuntary manslaughter, criminal gross negligence. When an involuntary-manslaughter charge is based on a theory of gross negligence, the offense does not have an element that reckless driving causing death does not have, and the Double Jeopardy Clauses prohibit convicting a defendant of both offenses.

3.  In order to avoid forfeiture under the plain-error rule, a defendant must satisfy three requirements: (1) error must have occurred, (2) the error was plain, i.e., clear or obvious, and (3) the plain error affected substantial rights.  If the defendant satisfies those requirements, then reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity, or public reputation of judicial proceedings independent of the defendant's innocence.  Defendant satisfied each of the first three requirements in this case.  First, an error occurred—defendant could not be convicted of and sentenced for both involuntary manslaughter and reckless driving causing death.  Second, the error was plain; it was clear and obvious from an existing statute and caselaw that convictions for both involuntary manslaughter and reckless driving causing death violate double jeopardy.  Third, the violation of double jeopardy was an error affecting substantial rights.  Finally, it was proper to reverse the decision of the Court of Appeals because a defendant that is impermissibly convicted of and sentenced for two crimes seriously affected the fairness of the judicial proceedings.

Court of Appeals judgment reversed; case remanded to the trial court to determine the appropriate remedy for the double-jeopardy violation.

Justice CAVANAGH, joined by Justice WELCH, concurring with the majority in full, wrote separately to question whether plain-error review should be applicable when analyzing whether a conviction violates the multiple-punishments prong of double jeopardy.  In this case, the majority addressed the plain language of the elements of the convictions before concluding that double-jeopardy protections prohibit convicting a defendant of both involuntary manslaughter and reckless driving causing death based on the same conduct.  The majority's conclusion regarding the plain language of the convictions informed the majority's plain-error review.  Specifically, the majority held that the error was plain—because the *mens rea* for each conviction was clearly the same—and that defendant was surely prejudiced—because he was convicted of two crimes when he could only have been convicted of one.  Accordingly, plain-error review appeared to be redundant to the analysis of the constitutional violation itself.  Thus, Justice CAVANAGH posited that violations of the multiple-punishments prong of double jeopardy may be a category of error for which the second and third elements of plain-error review are automatically met if an error is determined to have occurred.

# OPINION

Chief Justice:
Elizabeth T. Clement

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden

FILED December 26, 2024

S T A T E   O F   M I C H I G A N

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

      No. 164098

FREDERICK MICHAEL FREDELL,

      Defendant-Appellant.

BEFORE THE ENTIRE BENCH

VIVIANO, J.

A jury found defendant, Frederick Fredell, guilty of both involuntary manslaughter, MCL 750.321, and reckless driving causing death, MCL 257.626(4). The convictions arose from a car crash that occurred while defendant was speeding and had alcohol and controlled substances in his system. At issue is whether the multiple-punishments strand of double jeopardy precludes conviction of both offenses when the involuntary-manslaughter charge is premised on a theory of the defendant's gross negligence. The

statutes do not provide a clear answer as to whether the Legislature intended to allow multiple punishments for these offenses. Thus, we must apply the abstract-legal-elements test, which requires us to consider whether each offense has an element that the other offense does not. We conclude that when an involuntary-manslaughter charge is based on the defendant's alleged gross negligence, the offense does not satisfy this test. Contrary to the conclusion of the Court of Appeals, the *mens rea* requirements for the two offenses are the same. Although defendant did not preserve this issue in the trial court, he has satisfied the requirements of the plain-error test to avoid the issue being forfeited, and we believe reversal is warranted. Therefore, we reverse the judgment of the Court of Appeals and remand this case to the trial court to determine the appropriate remedy for the double-jeopardy violation. In all other respects, leave to appeal is denied.

## I. FACTS AND PROCEDURAL HISTORY

In September 2015, defendant drove his vehicle on I-69 in Genessee County and struck the back of another vehicle. There were five individuals in the other vehicle; two died as a result of the crash, and the other three were seriously injured. Defendant had been speeding, and police officers observed him driving 137 miles per hour moments before the crash; according to the data recorder in defendant's vehicle, it was traveling 121 miles per hour five seconds before the crash and 79 miles per hour one second before the crash. Toxicology testing of defendant's blood revealed he had a blood alcohol level of 0.034 grams of alcohol per 100 milliliters of blood, 10 nanograms of tetrahydrocannabinol (THC) per milliliter, and 176 nanograms of oxycodone per milliliter. Relevant to this appeal, a

2

jury convicted defendant of two counts of involuntary manslaughter, MCL 750.321, and two counts of reckless driving causing death, MCL 257.626(4).[1]

On direct appeal, defendant claimed for the first time that his convictions violated the multiple-punishments strand of double jeopardy. He argued that he should have only one homicide conviction for each victim who died and one nonhomicide conviction for each victim who was injured. Among his claims on appeal was the argument that his convictions for both involuntary manslaughter and reckless driving causing death were impermissible. The Court of Appeals affirmed defendant's convictions in a published opinion. *People v Fredell*, 340 Mich App 221; 985 NW2d 837 (2022).[2]

Defendant sought leave to appeal in this Court. After initially holding the case in abeyance, we scheduled oral argument on the application to consider

> whether conviction for both involuntary manslaughter, MCL 750.321, and reckless driving causing death, MCL 257.626(4), violates the constitutional double-jeopardy protection against multiple punishments for the same offense where the theory under which defendant was convicted of involuntary manslaughter requires that defendant act with "gross negligence" in committing an unintentional killing, *People v Holtschlag*, 471 Mich 1, 21-22[; 684 NW2d 730] (2004), and MCL 257.626(4) requires that defendant

---

[1] Defendant had been charged with two counts of second-degree murder, but the jury found him guilty of the lesser offense of involuntary manslaughter. The jury also found him guilty as charged of two counts of operating a vehicle while intoxicated or visibly impaired causing death, MCL 257.625(1), (3), and (4); three counts of operating a vehicle while intoxicated or visibly impaired causing serious impairment of a body function, MCL 257.625(1), (3), and (5)(a); and three counts of reckless driving causing serious impairment of a body function, MCL 257.626(3).

[2] Defendant also raised arguments regarding the scoring of three offense variables (OVs) that would not affect his guidelines and a clerical error in the judgment of sentence. The Court of Appeals remanded to the trial court to correct the judgment of sentence and to allow defendant to raise the OV scoring issues.

cause a death with "willful or wanton disregard for the safety of persons or property." [*People v Fredell*, 513 Mich 934, 934-935 (2023).]

## II. STANDARD OF REVIEW

Questions of law regarding statutory interpretation and the application of our state and federal Constitutions are reviewed de novo. *People v Miller*, 498 Mich 13, 16-17; 869 NW2d 204 (2015).

## III. ANALYSIS

## A. DOUBLE JEOPARDY

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides that no "person be subject for the same offence to be twice put in jeopardy of life or limb . . . ." US Const, Am V. The Michigan Constitution contains a similar provision: "No person shall be subject for the same offense to be twice put in jeopardy." Const 1963, art 1, § 15. We have construed these provisions consistently in the past, *Miller*, 498 Mich at 17 n 9, and both parties agree that we should do so here.

The Double Jeopardy Clauses protect individuals in three ways: (1) "against a second prosecution for the same offense after acquittal," (2) "against a second prosecution for the same offense after conviction," and (3) "against multiple punishments for the same offense." *People v Wafer*, 509 Mich 31, 37-38; 983 NW2d 315 (2022). At issue in this case is the third category of protection, which is referred to as the "multiple punishments" strand of double jeopardy. *Id*. at 38.[3]

---

[3] The Prosecuting Attorneys Association of Michigan argues in its amicus brief filed in this case and in *People v McKewen*, ___ Mich ___; ___ NW2d ___ (December 26, 2024) (Docket No. 158869), and *People v Gardner*, ___ Mich ___ (December 26, 2024) (Docket No. 163124), that there is no separate multiple-punishments strand of double jeopardy and that the issue is properly analyzed as one of due process. See *Hudson v United States*, 522 US 93; 118 S Ct 488; 139 L Ed 2d 450 (1997); *Dep't of Revenue of Mont v Kurth Ranch*,

The multiple-punishments strand "is designed to ensure that courts confine their sentences to the limits established by the Legislature and therefore acts as a restraint on the prosecutor and the Courts." *Miller*, 498 Mich at 17-18 (quotation marks and citation omitted). This strand of double-jeopardy jurisprudence "is not violated where a legislature specifically authorizes cumulative punishment under two statutes." *Id*. at 18 (cleaned up). But if "the Legislature expresses a clear intention in the plain language of a statute to prohibit multiple punishments, it will be a violation of the multiple punishments strand for a trial court to cumulatively punish a defendant for both offenses in a single trial." *Id*. Whether multiple punishments are constitutionally permitted is ultimately a question of legislative intent. *Id*.

We use a two-part test to determine whether multiple punishments arising from the same conduct are permitted. *Wafer*, 509 Mich at 38. "The first step is to look to the ordinary meaning of the statute. If the Legislature has clearly indicated its intent with regard to the permissibility of multiple punishments, the inquiry ends here." *Id*. at 39 (cleaned up). But if the Legislature's intent is not clear from the text of the statute, we apply the abstract-legal-elements test from *People v Ream*, 481 Mich 223; 750 NW2d 536 (2008), and *Blockburger v United States*, 284 US 299; 52 S Ct 180; 76 L Ed 306 (1932). *Wafer*, 509 Mich at 39. Under that test, "if each of the offenses for which defendant was

---

511 US 767, 798; 114 S Ct 1937; 128 L Ed 2d 767 (1994) (Scalia, J., dissenting). In *Wafer*, the prosecution raised this same argument. Like in *Wafer*, our precedents treat this case as a double-jeopardy case, "no one has asked us to overrule our precedent, and . . . [it] has not [been] shown that the choice of theory would affect the outcome here, as the case ultimately comes down to the Legislature's intent as framed by the text." *Id*. at 38 n 1. Therefore, we decline to address amicus's argument at this time. See also *McKewen*, ___ Mich at ___ n 2; slip op at 1 n 2 (declining to address the argument).

5

convicted has an element that the other does not, then there is no double-jeopardy violation." *Wafer*, 509 Mich at 39-40. Stated differently, "two offenses will only be considered the 'same offense' where it is impossible to commit the greater offense without also committing the lesser offense." *Miller*, 498 Mich at 19.

Turning to the present case, defendant was convicted of involuntary manslaughter, MCL 750.321, and reckless driving causing death, MCL 257.626(4). MCL 750.321 states, in relevant part, "Any person who shall commit the crime of manslaughter shall be guilty of a felony punishable by imprisonment in the state prison, not more than 15 years or by fine of not more than 7,500 dollars, or both, at the discretion of the court." MCL 257.626 states, in relevant part:

> (1) A person who violates this section is guilty of reckless driving punishable as provided in this section.
>
> (2) Except as otherwise provided in this section, a person who operates a vehicle upon a highway or a frozen public lake, stream, or pond or other place open to the general public, including, but not limited to, an area designated for the parking of motor vehicles, in willful or wanton disregard for the safety of persons or property is guilty of a misdemeanor . . . .
>
> * * *
>
> (4) Beginning October 31, 2010, a person who operates a vehicle in violation of subsection (2) and by the operation of that vehicle causes the death of another person is guilty of a felony punishable by imprisonment for not more than 15 years or a fine of not less than $2,500.00 or more than $10,000.00, or both.

Some criminal statutes expressly address the availability of multiple punishments. See, e.g., *Miller*, 498 Mich at 23-24 (holding that the inclusion of an express authorization for multiple punishments for violations of MCL 257.625(4) or (5) implied legislative intent

6

"to exclude all other multiple punishments under MCL 257.625"). But neither MCL 750.321 nor MCL 257.626 expressly addresses multiple punishments.[4] Thus, we can identify no clear indication of the Legislature's intent as to the permissibility or prohibition of multiple punishments arising from the same conduct. As a result, we must move on to the second step: applying the abstract-legal-elements test.

MCL 750.321 codified the penalty for involuntary manslaughter, but the elements of the offense are established by common law. See *People v Herron*, 464 Mich 593, 604; 628 NW2d 528 (2001).[5] "Involuntary manslaughter is the unintentional killing of another without malice in combination with a specified culpable act or mental state, which includes a causation component." *People v Tims*, 449 Mich 83, 94; 534 NW2d 675 (1995) (quotation marks, citation, and emphasis omitted). We have previously explained the *mens rea* of involuntary manslaughter as follows:

> [I]nvoluntary manslaughter is a catch-all concept including all manslaughter not characterized as voluntary: Every unintentional killing of a human being

---

[4] Although it is not pertinent here, MCL 257.626(5) contains language that may bear on the subject of multiple punishments. See MCL 257.626(5) ("In a prosecution [for reckless driving causing death], the jury shall not be instructed regarding the crime of moving violation causing death.").

[5] We have recognized that the abstract-legal-elements test " 'focuses on the statutory elements of the offense.' " *Ream*, 481 Mich at 236, quoting *Iannelli v United States*, 420 US 770, 785 n 17; 95 S Ct 1284; 43 L Ed 2d 616 (1975). At least one of our sister state high courts has questioned whether the test can be applied in cases involving common-law crimes. See *State v Collins*, 174 W Va 767, 771; 329 SE2d 839 (1984). But *Blockburger* merely "established a rule of statutory construction," *Missouri v Hunter*, 459 US 359, 366; 103 S Ct 673; 74 L Ed 2d 535 (1983), and it is also a rule of statutory construction that "[t]he Legislature is presumed to know of the existence of the common law when it acts," *Wold Architects & Engineers v Strat*, 474 Mich 223, 234; 713 NW2d 750 (2006). Because both parties argue that the abstract-legal-elements test applies under these circumstances, we assume, without deciding, that it does.

7

is involuntary manslaughter if it is neither murder nor voluntary manslaughter nor within the scope of some recognized justification or excuse. If a homicide is not voluntary manslaughter or excused or justified, it is, generally, either murder or involuntary manslaughter. If the homicide was committed with malice, it is murder. If it was committed with a lesser mens rea of gross negligence or an intent to injure, and not malice, it is not murder, but only involuntary manslaughter. [*People v Holtschlag*, 471 Mich 1, 21-22; 684 NW2d 730 (2004) (cleaned up).]

The prosecution's theory in this case was that defendant acted in a grossly negligent manner, and there is no argument that defendant had an intent to injure. Thus, for purposes of this case, the elements of involuntary manslaughter are (1) the defendant caused the death of another and (2) in doing the act that caused the death, the defendant was grossly negligent. See *Tims*, 449 Mich at 94; *Holtschlag*, 471 Mich at 21-22. This is consistent with how the trial court instructed the jury.[6]

MCL 257.626 defines the crimes of reckless driving, reckless driving causing serious impairment, and reckless driving causing death. The elements of reckless driving causing death under MCL 257.626(4) are: (1) the defendant operated a motor vehicle on a highway or other place open to the public, (2) the defendant "operate[d] a vehicle in willful or wanton disregard for the safety of persons or property," and (3) "by the operation of that vehicle cause[d] the death of another person." *People v Jones*, 497 Mich 155, 167; 860 NW2d 112 (2014) (cleaned up); see also M Crim JI 15.14a.[7] The second element contains

---

[6] As noted above, defendant was charged with second-degree murder, so the instruction for involuntary manslaughter was read as a lesser offense.

[7] The model criminal jury instruction states the first element as "the defendant drove a motor vehicle on a highway or other place open to the public or generally accessible to motor vehicles [including any designated parking area]." M Crim JI 15.14a (alteration in original). But MCL 257.626 does not include the "generally accessible to motor vehicles" language. There is no dispute that defendant operated the vehicle on a highway, so we

8

the *mens rea* component, which is derived from MCL 257.626(2) (prohibiting operation of a vehicle "in willful or wanton disregard for the safety of persons or property").[8]

The Court of Appeals correctly concluded that reckless driving causing death contains an element that involuntary manslaughter does not. The former requires that the defendant operate a vehicle, while the latter does not.

But the Court of Appeals erred by holding that involuntary manslaughter contains a *mens rea* element that reckless driving causing death does not. Defendant argues that the *mens rea* elements of the two crimes are different. The Court of Appeals rejected this argument, acknowledging "the similarities between gross negligence and recklessness" but explaining "that gross negligence involves a greater degree of culpability than recklessness on the continuum of mental states." *Fredell*, 340 Mich App at 241, citing *People v Feezel*, 486 Mich 184, 196; 783 NW2d 67 (2010), and *People v Head*, 323 Mich App 526, 532; 917 NW2d 752 (2018). In doing so, the Court of Appeals' analysis failed to account for the fact that although the Legislature named the class of driving offenses contained in MCL 257.626 "reckless driving" (and used that phrase in the catchline heading of the statute, see 1949 PA 300), MCL 257.626(2) provides that the *mens rea* for all forms of reckless driving under MCL 257.626 is "willful or wanton disregard for the safety of persons or property." Therefore, the proper inquiry is whether "gross negligence" and "willful or wanton

---

need not address whether operating a motor vehicle on a place "generally accessible to motor vehicles" satisfies the first element.

[8] The Legislature used the same *mens rea* for violations of MCL 257.626(2), (3), and (4), with the defining features of each offense being whether the defendant's driving resulted in harm to a person and, if so, the severity of the harm.

9

disregard for the safety of persons or property" are the same, not whether gross negligence and recklessness are the same.

Our caselaw makes it clear that these legal elements are the same. In *Feezel*, we defined criminal gross negligence as " 'wantonness and disregard of the consequences which may ensue . . . .' " *Feezel*, 486 Mich at 195 (opinion by CAVANAGH, J.), quoting *People v Barnes*, 182 Mich 179, 198; 148 NW 400 (1914). We went on to say that wantonness "usually 'suggests a greater degree of culpability than recklessness . . . .' " *Feezel*, 486 Mich at 196 (opinion by CAVANAGH, J.), quoting *Black's Law Dictionary* (8th ed). It was on this second statement that the Court of Appeals relied. Nothing in our *Feezel* opinion purported to overrule Michigan's traditional understanding of criminal gross negligence as encompassing wantonness and disregard of the consequences or dangers of one's actions. See *People v Schaefer*, 473 Mich 418, 438-439; 703 NW2d 774 (2005) ("In criminal law, 'gross negligence' is not merely an elevated or enhanced form of ordinary negligence. As we held in [*People v*] *Barnes*, [182 Mich 179, 198; 148 NW 400 (1914)], in criminal jurisprudence, gross negligence 'means wantonness and disregard of the consequences which may ensue, and indifference to the rights of others that is equivalent to a criminal intent.' "). See also *People v Datema*, 448 Mich 585, 604-605; 533 NW2d 272 (1995).[9]

---

[9] In *Datema*, 448 Mich at 604-605, we explained how, under Michigan common law, the concept of "gross negligence" has long been used as an equivalent for "criminal negligence":

> The error in this contention is illustrated by viewing the legally significant mental states as lying on a continuum: criminal intention anchors one end of the spectrum and negligence anchors the other. Intention, as explained by Professor Hall, "emphasiz[es] that the actor seeks the

As noted above, the statutory *mens rea* requirement for reckless driving is not recklessness; instead, the statute provides that it is "willful or wanton disregard for the safety of persons or property." See MCL 257.626(2). Under our common law, the *mens rea* requirement for reckless driving causing death, willful or wanton disregard, is the same as the *mens rea* requirement for involuntary manslaughter, criminal gross negligence.[10] Therefore, when an involuntary-manslaughter charge is based on a theory of gross negligence, the offense does not have an element that reckless driving causing death does

> proscribed harm not in the sense that he desires it, but in the sense that he has chosen it, he has decided to bring it into being." General Principles of Criminal Law (2d ed), p 114. Negligence, lying at the opposite end of the spectrum, "implies inadvertence, i.e., that the defendant was completely unaware of the dangerousness of his behavior although actually it was unreasonably increasing the risk of occurrence of an injury." *Id.*
>
> Criminal negligence, also referred to as gross negligence, lies between the extremes of intention and negligence. As with intention, the actor realizes the risk of his behavior and consciously decides to create that risk. As with negligence, however, the actor does not seek to cause harm, but is simply "recklessly or wantonly indifferent to the results." [*People v*] *Campbell*, [237 Mich 424, 429; 212 NW 97 (1927)].
>
> Lack of actual or imputed intent to commit an act may absolve the actor from criminal liability. Criminal negligence, in some cases, however, may be used "as a substitute, so to speak, for criminal intent in connection with certain offenses." Perkins & Boyce, [Criminal Law (3d ed), p] 833. Thus, as we recognized in *People v Barnes*, [182 Mich] at 198, gross negligence "is equivalent to a criminal intent." Because subjective criminal intent is the most culpable mental state a defendant can possess, both gross negligence and negligence are less culpable mental states. Instructing the jury that it must find an intent to injure the victim is therefore a more stringent standard than allowing a conviction on the basis of the defendant's gross negligence.

[10] It is worth noting that on at least one occasion we have, in the context of manslaughter, equated "act[ing] carelessly in such a manner that manifests a reckless disregard for another's life" and "act[ing] with gross negligence." *Holtschlag*, 471 Mich at 19.

11

not have, and the Double Jeopardy Clauses prohibit convicting a defendant of both offenses. However, because defendant did not preserve this issue below, the existence of a double-jeopardy violation alone does not end our inquiry.

## B. PLAIN-ERROR REVIEW

The error here was not preserved in the trial court, as defendant did not argue that his convictions for both involuntary manslaughter and reckless driving causing death violated double jeopardy. Rather, this issue was raised for the first time in the Court of Appeals. In order to avoid forfeiture under our plain-error rule, defendant must satisfy three requirements: "1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). If defendant satisfies those requirements, we "must exercise [our] discretion in deciding whether to reverse," and "[r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. (cleaned up).

Defendant has satisfied each of the first three requirements. First, for the reasons stated above, an error occurred—defendant could not be convicted of and sentenced for both involuntary manslaughter and reckless driving causing death. Second, the error was plain. *Feezel*'s statement that criminal gross negligence is defined as "wantonness and disregard of the consequences which may ensue" was premised on our earlier decision in *Schaefer*, which, in turn, built on decades of Michigan common law dating back to at least the early 1900s. Additionally, MCL 257.626 specifies that the *mens rea* for reckless

12

driving causing death is "willful or wanton disregard," not "recklessness." In other words, it was clear and obvious from an existing statute and caselaw that convictions for both involuntary manslaughter and reckless driving causing death violate double jeopardy.[11] "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Carines*, 460 Mich at 763. That requirement is surely satisfied where, as here, a defendant is convicted of two crimes when he could only be convicted of one. See *United States v Jackson*, 443 F3d 293, 301-302 (CA 3, 2006) (characterizing the "right to be free from duplicative prosecutions and punishment [as] a hallmark of American jurisprudence" and holding that a violation of the multiple-punishments strand of double jeopardy is an error affecting substantial rights). The third requirement is satisfied.

We also believe we should exercise our discretion to reverse the Court of Appeals. Defendant does not argue that he is actually innocent, but defendant being impermissibly convicted of and sentenced for two crimes seriously affected the fairness of the judicial proceedings. See *Jackson*, 443 F3d at 301. As the United States Court of Appeals for the Fourth Circuit aptly observed, "[w]e cannot imagine a course more likely to 'seriously affect the fairness, integrity, or public reputation of judicial proceedings' than for us to permit [defendant's] conviction, obtained in such flagrant violation of the Double Jeopardy Clause, to stand." *United States v Jarvis*, 7 F3d 404, 413 (CA 4, 1993) (citation omitted).

---

[11] Indeed, although not binding on the courts, the prosecution conceded the double-jeopardy issue for these convictions in the Court of Appeals.

## IV.  CONCLUSION

A plain error occurred when defendant was convicted and sentenced for both involuntary manslaughter and reckless driving causing death.  Although there is no clear indication in the statutes as to whether the Legislature intended to allow multiple punishments for these crimes, application of the abstract-legal-elements test leads to the conclusion that a double-jeopardy violation occurred.  The *mens rea* requirements of involuntary manslaughter and reckless driving causing death are the same, such that the former contains no element that the latter does not.  Therefore, we reverse the judgment of the Court of Appeals and remand the case to the trial court to determine the appropriate remedy for the double-jeopardy violation.[12]  In all other respects, the application for leave to appeal is denied, because we are not persuaded that the questions presented should be reviewed by this Court.

David F. Viviano
Elizabeth T. Clement
Brian K. Zahra
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden

---

[12] We have observed in the past that "[w]e can correct [a multiple-punishments] error by affirming the conviction on either count and vacating the conviction on the other." *People v Martin*, 398 Mich 303, 313; 247 NW2d 303 (1976), overruled on other grounds by *People v Robideau*, 419 Mich 458 (1984).  "Usually we affirm the conviction on the higher charge and vacate the conviction on the lower charge . . . ." *Martin*, 398 Mich at 313.  Although the maximum monetary fines differ, both involuntary manslaughter and reckless driving causing death are punishable by up to 15 years in prison.  Defendant was sentenced to a minimum term of 86 months on his involuntary-manslaughter convictions and to a minimum term of 72 months on his reckless-driving-causing-death convictions.  We leave it to the trial court to decide on remand which of defendant's convictions to vacate.

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v                                            No. 164098

FREDERICK MICHAEL FREDELL,

        Defendant-Appellant.

_____

CAVANAGH, J. (*concurring*).

I concur with the majority that defendant's constitutional protection against double jeopardy was violated by his convictions of involuntary manslaughter and reckless driving causing death based on the same conduct. Although I agree with the result reached by the majority, I write separately to question whether plain-error review should be applicable when analyzing whether a conviction violates the multiple-punishments prong of double jeopardy.

As this Court has previously held, plain-error review applies to constitutional and nonconstitutional issues that were not raised in the trial court. See *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). However, this Court has not always addressed this standard of review in cases where double-jeopardy errors were not preserved by the defendant.[1] For example, in *People v Miller*, 498 Mich 13, 15; 869 NW2d 204 (2015)

_____

[1] In its supplemental brief, the prosecution states that double-jeopardy errors are subject to plain-error review but noted that "[t]raditionally, however, when this Court has heard cases

(*Miller II*), the defendant was convicted of both operating while intoxicated and operating while intoxicated causing serious impairment of a body function based on a single act. This Court held that these simultaneous convictions for the same action violated "the multiple punishments prong of the double jeopardy clauses." *Miller II*, 498 Mich at 26. Absent from this Court's decision, however, was any discussion of whether the defendant's double-jeopardy issue satisfied plain error, even though the Court of Appeals noted that the defendant did not preserve the issue by raising it in the trial court and concluded that plain-error review applied. *People v Miller*, unpublished per curiam opinion of the Court of Appeals, issued March 11, 2014 (Docket No. 314375), p 3 (*Miller I*).[2]

Nevertheless, the defendant in *Miller II* arguably satisfied the elements of a plain-error review without this Court specifically addressing them. As this Court has recognized, the multiple-punishments prong of double jeopardy turns on the Legislature's intent, which means it is based on the statutory language used by the Legislature. See *People v Smith*, 478 Mich 292, 312-313; 733 NW2d 351 (2007). And, so, while analyzing the plain language of the respective statutes, this Court in *Miller II*, at least indirectly, held that an

---

involving the multiple punishments strand of double jeopardy, it has not considered whether the issue was preserved in the trial court."

[2] Even though the Court of Appeals in *Miller I* held that the defendant's argument was subject to plain-error review, the briefs presented to the Court of Appeals in that case, by both the defendant and the prosecution, cited *People v Colon*, 250 Mich App 59, 62; 644 NW2d 790 (2002), to argue that the Court of Appeals should "review [the] double jeopardy issue regardless of whether the defendant [had] raised the issue before the trial court because it involve[d] a significant constitutional question." (Quotation marks and citation omitted.)

error had occurred,[3] that the error was plain,[4] and that the defendant's substantial rights were affected by the error.[5]  *Miller II*, 498 Mich at 25-27.  Here, the majority likewise addresses the plain language of the elements of the convictions before concluding that double-jeopardy protections prohibit convicting a defendant of both involuntary manslaughter and reckless driving causing death based on the same conduct.  The majority's conclusion regarding the plain language of the convictions informs the majority's plain-error review.  Specifically, the majority holds that the error was plain—because the *mens rea* for each conviction is the clearly the same—and that defendant was surely prejudiced—because he was convicted of two crimes when he could only have been

---

[3] *Miller II*, 498 Mich at 26 ("We conclude that defendant's convictions of both [operating while intoxicated] and [operating while intoxicated causing serious impairment of a body function] for the same intoxicated driving incident violates the multiple punishments prong of the double jeopardy clauses.").  This Court has explained that, for the purposes of plain-error review, an error is defined as a "[d]eviation from a legal rule . . . unless the rule has been waived."  *People v Shafier*, 483 Mich 205, 219; 768 NW2d 305 (2009) (quotation marks and citation omitted).

[4] *Miller II*, 498 Mich at 26-27 ("Based on the plain language of MCL 257.625, the Legislature expressed a clear intent not to allow conviction of and punishment for multiple offenses arising from the same conduct, except where explicitly authorized by the statute.").  Further, this Court has explained that an error is plain, for the purposes of plain-error review, when it is "clear or obvious."  *Shafier*, 483 Mich at 219.  This includes, but is not limited to, when "the error was an obvious violation of a defendant's due process rights" under precedent.  *Id*. at 220.  In *Miller II*, however, this Court focused solely on the plain language of the statutes involved when determining that a violation of double jeopardy had occurred.

[5] *Miller II*, 498 Mich at 18 ("[W]here the Legislature expresses a clear intention in the plain language of a statute to prohibit multiple punishments, it will be a violation of the multiple punishments strand for a trial court to cumulatively punish a defendant for both offenses in a single trial.").  Further, like the majority notes, the "right to be free from duplicative prosecutions and punishment is a hallmark of American jurisprudence," and a violation of the multiple-punishments strand of double jeopardy is an error affecting substantial rights. *United States v Jackson*, 443 F3d 293, 301-302 (CA 3, 2006).

3

convicted of one. Accordingly, plain-error review appears to be redundant to the analysis of the constitutional violation itself. Thus, violations of the multiple-punishments prong of double jeopardy may be a category of error for which the second and third elements of plain-error review are automatically met if an error is determined to have occurred.[6]

Assuming that plain-error review has any meaningful role in resolving a multiple-punishments double-jeopardy claim, I agree with the majority that defendant's claim in this case meets that standard. Accordingly, it is unnecessary to definitively resolve whether plain-error review is required for these types of double-jeopardy errors in this case. Therefore, I concur in full with the majority.

Megan K. Cavanagh
Elizabeth M. Welch

---

[6] I note that the Court recently recognized that plain-error review applies differently in the context of structural errors. See *People v Davis*, 509 Mich 52, 73-77; 983 NW2d 325 (2022) (holding that a plain, structural error satisfies prong three of the *Carines* standard, i.e., whether the error affected substantial rights, and creates a formal rebuttable presumption that prong four of the *Carines* standard, i.e., whether the error seriously affected the fairness, integrity, or public reputation of the judicial proceedings independent of the defendant's innocence, is satisfied). I express no opinion regarding whether a double-jeopardy violation is considered structural, nonstructural, or something else entirely. But this recent decision indicates that plain-error review may apply differently depending on the type of error at issue.